UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| KINDER CANAL CO. INC., AND MIKE T. UNKEL | : | DOCKET NO. 05-1123 |
| VS. | : | JUDGE TRIMBLE |
| MIKE JOHANNS, SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the Court are the following motions; (1) "Motion for Summary Judgment on Behalf of Mike T. Unkel", (doc. #5) (2) "Motion for Summary Judgment on Behalf of Kinder Canal Company, Inc. (2001)" (doc. #6), (3) "Motion for Summary Judgment on Behalf of Kinder Canal Company, Inc." (doc. #10), and (4) "Government's Cross-Motion for Summary Judgment" (doc. #18).

### FACTUAL STATEMENT

This case involves an action for judicial review of a final decision by the Farm Service Agency of the U.S. Department of Agriculture ("FSA"). The FSA is demanding a refund of certain farm program payments received by Kinder Canal Company, Inc. and Mike T. Unkel from 1996 through 2003. With interest, the original amount demanded was $1,166,254.64.[1]

Plaintiff, Kinder Canal Company, Inc. is a corporation comprised of 19 family members. Plaintiff, Mike T. Unkel is a 22.5% shareholder and President of the company. Unkel is also a member of "Unkel Four", a joint venture. On July 18, 1996, Unkel, acting on behalf of Kinder Canal

---

[1] This amount has since been reduced due to the FSA withholding payments Unkel would otherwise be entitled to as a member of the joint venture, Unkel Four.

Company, Inc. signed a Form CCC-478, Production Flexibility Contract ("PFC") and enrolled Farm Serial Number ("FSN") 1228 in the PFC program. FSN 1228 was comprised of 7 tracts of land; 417, 506, 507, 516, 517, 522, and 1447. The FSA approved the contract for payment on September 26, 1996.

The owner of Tract 417, Mrs. Leo Unkel, for whom Unkel held a power of attorney from 1983, died in December 1991. Mrs. Leo's son, John Unkel inherited tract 517 and sold the tract to two separate individuals, Michael LaBuff and William Blake on September 17, 1993. Unkel was aware of this change in ownership when he signed the 1996 PFC.

For program year 1997, Unkel, acting on behalf of KCC, reported no changes in payment shares and owners to the FSA. On August 28 and September 2, 1997, the FSA deleted tracts 506, 507 and 516 from FSN 1228, but did not delete the rice bases acreage attributed to those tracts. In other words, even though the Cropland Acres was reduced by the tracts deleted, the crop acreage bases was not changed to reflect the deletion of Tracts 506, 507 and 516.

On November 17, 1997, Unkel on behalf of KCC requested a farm reconstitution because KCC had sold Tract 522. On December 4, 1997, the FSA reconstituted FSN 1228 by the division method and transferred this tract to FSN 1431[2].

On December 29, 1997; December 17, 1998; December 7, 1999; January 3, 2000; and December 6, 2001, Unkel, acting on behalf of KCC, enrolled FSN 1431 in the PFC for program years 1998 through 2002 by signing Forms CCC-478. The FSA approved the contracts. Unkel enrolled all of the rice bases acreage attributed to the tracts that the FSA had deleted from FSN 1228 in 1997. Unkel signed each of the contracts as landowner on behalf of his deceased aunt, despite knowing that

---

[2] KCC sold Tract 522 without the rice bases acreage.

2

she had died in 1991, that he no longer had a valid power-of-attorney, that her estate no longer owned the tract, and that there were two new owners. Hence, the contract signed by Unkel contained an incorrect amount for the Total Base Acres.

On June 6, 2000, Unkel, as agent for his son, M.W. Unkel, reported acreage on FSN 1341 for program year 2000, reporting that his son and daughter-in-law shared in the acreage on tract 517, despite his knowledge that neither KCC nor M.W. Unkel had a lease on the property and the property was owned by other individuals.

On December 5, 2002, Unkel, acting on behalf of KCC and their operators/producers of FSN 1431, made base and yield elections for the Direct and Counter-Cyclical Program ("DCP").[3] Unkel informed the County Office that there was one new owner of the land once owned by his deceased aunt, but he failed to inform the County Office of the second new owner. On this same day, Unkel, acting on behalf of KCC, signed Form CCC-509, and enrolled FSN 1431 into the DCP program. Unkel enrolled the same amount of acreage bases as was enrolled in the PFC(s), which included rice acreage bases of land KCC was not leasing. The FSA approved the DCP contract on December 18, 2002.

Based on these factual misrepresentations, the FSA made payment determinations concerning the PFC program. Furthermore, payments under the Marketing Loss Assistance ("MLA") program, a program directly tied to the PFC program, were made to KCC in the years 1998 through 2001. Finally, payments determinations were made based on Unkel's misrepresentations concerning the DCP program.

---

[3] The Farm Security and Rural Investment Act of 2002 (Public Law 107-171) was signed into law on May 13, 2002 and provided producers the opportunity to enroll in the DCP Program beginning in 2002.

3

In 2003, the USDA Office of Inspector General ("OIG") conducted an audit of the DCP program and related farm programs in Allen Parish, Louisiana, to determine whether participants were eligible for program participation and whether the FSA accurately based program payments on valid acreage and yield determinations. The OIG found that Unkel misrepresented land ownership and crop acreage bases to obtain program benefits and that this misrepresentation was intentional. The OIG report stated that on April 2, 2003, Unkel admitted that he had discussed the 1993 land sale with one of the two purchasers shortly after the transaction was final; he admitted that he continued to sign for his deceased aunt as if she owned the land for several years after the land was sold; he admitted that the tracts were not owned by KCC, and had not been leased.

The OIG recommended that the FSA Louisiana State Committee ("STC") pursue collection of all PFC and MLA payments KCC received in the years 1996 through 2002, and the 2002 and 2003 DCP payments; pursue collection of all PFC and MLA payments Unkel received in the years 1996 through 2002 as a 100 percent shareholder in Mike T. Unkel Farms, Inc.,[4] and pursue collection of all PFC and MLA payments Unkel received in the years 1996 through 2002 as a member of the Unkel Four Joint Venture.

Due to the misrepresentations made by Unkel, the STC determined that KCC must refund all PFC and MLA payments it received in the years 1996 through 2002, plus interest. The STC also terminated Unkel's undivided interest in all 1996 through 2002 PFC payments and determined that he must refund all payments he personally received in the years 1996 through 2002. Finally, the STC determined that KCC must refund the 2002/2003 DCP payments it received.

---

[4] The NAD Director held that the contracts of the entity Mike T. Unkel Farms, Inc. were not in the record, that it was not a producer of record of any of the KCC contracts. thus, the STC did not pursue collection of these payments.

4

KCC and Unkel appealed to the National Appeals Division Hearing Officer ("NAD"). On January 8, 2005, the NAD Hearing Officer determined that Unkel misrepresented facts affecting PFC and DCP program determinations, and that KCC and Unkel must refund all PFC, MLA and DCP payments received, plus interest. KCC and Unkel requested a review of the NAD. The NAD Director upheld the earlier decisions as they relate to the KCC and Unkel. The Director specifically found that (1) Unkel knowingly misrepresented facts respecting the ownership of land and rice acreage bases when executing the 1996 through 2002 PFC and DCP contracts, (2) Unkel is a producer who knowingly misrepresented program facts, although the misrepresentations were on behalf of KCC, Unkel must refund payments received for his participation in the Joint Venture, and (3) KCC is not entitled to equitable relief because Unkel, on behalf of KCC, did not act in good faith in misrepresenting land ownership and rice crop acreage bases.

The NAD Director concluded that the FSA's decision to demand a refund of PFC payments received in the years 1996 through 2002 and refund of 2002 and 2003 DCP payments was not erroneous. The Director held that because KCC was not eligible for PFC payments as a result of the misrepresentations, it was also ineligible for the corresponding MLA payments.[5]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by

---

[5] MLA payments are only paid to producers on farms that are eligible for final payments in the PFC program.

[6] Fed. R.Civ. P. 56(c).

5

demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[11]

## LAW AND ANALYSIS

Plaintiffs, the KCC and Unkel, seek a declaratory judgment that the final decision of the FSA was in error. A final agency decision is reviewed deferentially.[12] Determinations of administrative agencies are subject only to limited and significantly deferential review under the Administrative Procedures Act.[13] The general standard under the Administrative Procedures Act, 5 U.S.C. §§ 701, *et seq.*, is whether the agency's final decision was arbitrary, capricious, an abuse of discretion, or

---

[7] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11] *Anderson*, 477 U.S. at 249-50.

[12] *Sierra Club v. U.S. Fish & Wildlife Service*, 245 F.3d 434, 444 (5th Cir. 2001).

[13] *Organized Fishermen of Florida v. Hodel*, 775 F.2d 1544, 1550 (11th Cir. 1985), *cert. denied*, 476 U.S. 1169 (1986).

otherwise not in accordance with the law.[14] A district court reviews an agency finding to determine whether it is supported by substantial evidence.[15] The court reviews the record established during the administrative proceedings to determine whether the agency considered the relevant factors or made a clear error in judgment in reaching its decision.[16] An agency must articulate a rational relationship between the facts found and the choice made.[17]

A rule is "arbitrary and capricious" only where the agency has considered impermissible factors, failed to consider important aspects of the problem, offered an explanation for its decision that is contrary to the record evidence, or is so irrational that it could not be attributed to a difference in opinion or the result of agency expertise.[18] Thus, agency decisions will be upheld so long as the agency "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[19]

A district court decides only whether the agency's interpretation was plainly erroneous or inconsistent with its own regulations; otherwise, the agency's construction of its own regulations is controlling.[20]

---

[14] 5 U.S.C. § 706(2)(A); *Sierra Clug*, 245 F.3d at 444.

[15] 5 U.S.C. § 706(2)(E); *Refrigerated Transport Co., Inc v. I.C.C.*, 663 F.2d 528, 530 (5th Cir. 1981).

[16] *Seventy One Farm v. USDA*, 65 Fed.Appx. 508 (5th Cir. 2003).

[17] *Id.*

[18] *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856 (1983).

[19] *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239 (1962); *BCCA Appeal Group v. U.S. E.P.A.*, 355 F.3d 817, 824 (5th Cir. 2003).

[20] *Silwany-Rodriguez v. INS*, 975 F.2d 1157, 1160 (5th Cir. 1992).

The Federal Agricultural Improvement and Reform Act of 1996 was signed into law on April 4, 1996. The 1996 Act provided the Secretary of Agriculture with a 7-year framework to administer agriculture and food programs from 1996 through 2002. The Agency did so through the Agricultural Market Transition Act Program. This program provided producers on farms with acreage bases with the opportunity to enter into a 7-year Production Flexibility Contract ("PFC") for the years 1996 through 2002.

Producers who participate in the program are required by statute[21] to fully comply with the terms of the PFC. In return for compliance, they receive production flexibility payments. The farmers received PFC payments for each fiscal year that they participated in the program.

The Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act directed the FSA to issue Market Loss Assistance ("MLA") program payments to farmers who were eligible for final payments under the PFC program.

The Farm and Rural Investment Act of 2002 was signed into law on May 13, 2002. The law provided producers the opportunity to enroll their farm in the Direct and Counter-Cyclical Program beginning in 2002. The 2002 Act provides for the continuation of the farm programs between 2002 and 2007 *via* regulations contained in 7 C.F.R. Part 1412 (2003).

Between 1996 and 2002, the applicable penalty provisions for PFCs were 7 C.F.R. § 1412.405(b)(3)(1997) and 7 C.F.R. § 1412.401(a)(1997). Starting in 2002, the applicable penalty provisions for the DCP are 7 C.F.R. § 1412.604(2003) and 7 C.F.R. § 1412.601(a)(2003).

Subpart F to 7 C.F.R. § 1412 contains the pertinent provisions for contract violations under

---

[21] Title 7 C.F.R. § 1412.101.

the DCP, including a subsection on *"Misrepresentation and Scheme or Device"*[22] similar to 7 C.F.R. § 1412.405(1997) on PFCs. Violations of a DCP contract requirement result in termination of the contract and require the producer to forfeit all rights to receive DCP payments on the farm for the contract year and to refund all DCP payments received, plus interest.[23]

*Motion for Summary Judgment on Behalf of Mike T. Unkel (doc. #5)*

Unkel maintains that it was legal error for him to be held individually liable for the refund of payments. He argues that the producer and signatory on each contract at issue was KCC, a registered Louisiana corporation. Citing Title 7 C.F.R. § 1400.101,[24] Unkel further argues that because he was a signatory acting on behalf of KCC, and owning less than 25% shares, he as a matter of law can not be held individually liable.

Defendant, Mike Johanns maintains that 7 C.F.R. § 1400.101 applies to accounting for entities and individuals for each particular harvest year's program benefits because § 1400 consists of the "Payment Limitation" regulations. Johanns further contends that contract regulations are set forth at 7 C.F.R. § 1412, *et seq*. Hence, Johanns argues that Unkel is attempting to use for his benefit a provision that does not apply to the penalty provisions.

Title 7 C.F. R. § 1412.405(b)(3)(1997) and subsequent regulations pertaining to DCPs, 7

---

[22] 7 C.F.R § 1412.604.

[23] 7 C.F.R. § 1412.601(a)(2003).

[24] (a) A limited partnership, limited liability partnership, limited liability company, corporation, or other similar entity shall be considered to be a person separate from an individual partner, stockholder, or member except that a limited partnership, limited liability partnership, limited liability corporation, corporation, or other similar entity in which more than 50 percent of the interest in such limited partnership, limited liability partnership, limited liability corporation, corporation, or other similar entity is owned by an individual (including the interest owned by the individual's spouse, minor children, and trusts for the benefit of such minor children) or by an entity shall not be considered as a separate person from such individual or entity.

9

C.F.R. §§ 1412.604 (2003) and 1412.601(a)(2003), provide that a "producer" who is determined to have knowingly misrepresented any fact affecting a program determination shall refund all payments received. Title 7 C.F.R. § 718.2 defines producer as follows:

> Producer means an owner, operator, landlord, tenant or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing from the farm, or would have shared had the crop been produced. A producer includes a grower of hybrid seed.

This Court is more persuaded by the Government's arguments and finds that the penalty provisions set forth in §§ 1412.401(a)(1997), 1412.405(1997), 1412.601(2003) and 1412.604(2003) as well as the statutory definition of a producer apply, not 7 C.F.R. § 1400.101. Unkel is a producer who shares in the risk of producing a crop. Whether he is a member of a joint venture or a shareholder of a corporation, he is by statutory definition, a producer. Consequently, the Court finds that Unkel, as a producer who knowingly misrepresented facts, is required by Title 7 C.F.R. §§ 1412.405 (1997), 1412.601(2003), and 1412.604(2003) to refund all payments he received with respect to all contracts.

Unkel argues that he should not have to refund payments received by Unkel Four, a joint venture in which he was a member because the misrepresentations made only affected payment determinations for KCC. The court disagrees. Title 7 C.F.R. § 1412.401(a) (1997) states, in part:

> Except as provided in paragraph (b) of this section, if a producer subject to a contract violates a requirement of the contract specified in §§ 1412.206(c), 1412.402, 1412.403, and 1412.405, the Deputy Administrator ***shall terminate the contract with respect to the producer on each farm in which the producer has an interest.*** Upon such termination, the ***producer shall forfeit all rights to receive future contract payments on each farm in which the producer has an interest and shall refund all contract payments received*** by the producer during the period of the violation, plus interest with respect to the contract payments as determined in accordance with part 1403 of this chapter.(emphasis added)

10

Furthermore, the Appendix to Form CCC-478, states that the regulations at 7 C.F.R. parts 12, 718 and 1412 are incorporated by reference into the contract. Page 4 specifically provides:

6. LOSS OF BENEFITS: A. If CCC determines a producer erroneously or fraudulently represented *any fact* affecting a determination to be made by CCC under this contract, or knowingly adopted any scheme or device which tends to defeat the purposes of this contract, the contract shall be terminated with respect to such producer on each farm in which the producer has an interest. Upon the termination, the *producer shall forfeit all rights to contract payments on each farm in which the producer has an interest and shall refund to CCC all contract payments received* by the producer during the period of violation, plus interest. (emphasis added)

The clear language of these provisions provides that the contracts of all of the producer's farms shall be terminated and all contract payments received shall be refunded, not just the farm in which the misrepresentation was made.

*Motion for Summary Judgment on Behalf of Kinder Canal Company, Inc. (2001)(doc. #6)*

This motion only addresses the year 2001 and the PFC payment for that year. The FSA has found that by erroneously including rice base acreage in its PFC and DCP 2001 applications, KCC violated Title 7 of the Code of Federal Regulation. Hence, the KCC is therefore liable for statutory penalties. This motion seeks a finding that the FSA abused its discretion in requiring an entire refund for the year 2001, and that the refund should be only $1,124.00 (the overpayment for that year).

On May 31, 2004 the NAD Director demanded the refund of certain farm program payments received by KCC (from 1996-2003) and Mike T. Unkel and Mike T. Unkel Farms, Inc. (from 1996-

11

2002) exceeding one million dollars.[25]

Plaintiffs argue that because the FSA deleted tracts 506, 507 and 516 from the Cropland Acres, but failed to remove the crop acreage bases on the farm, the FSA's mistake somehow exonerates Unkel from liability. The FSA determined that even though the FSA prepared the contract for Unkel's signature and made the initial error, Unkel made misrepresentations that affected payment determinations. The tracts involved are the Cole/Morrow tracts and Tract 517, property previously owned by Mrs. Leo Unkel, and subsequently by her son, John Unkel. John had sold Tract 517 to Michael LaBuff and William Blake on September 6, 1993, but Unkel included it as part of KCC's PFC (FSN 1431) for 2001. This is an active misrepresentation that involved tracts of land which were included as if they were owned or leased by the KCC, when in fact they were not.

In order to be eligible for PFC payments, eligible producers were given the opportunity to enroll in a contract and receive contract payments determined fair and equitable as agreed to by the producer on the farm and approved by the County Committee. If a producer was not the land owner, he must have a written lease, or a complete written description of the terms and conditions of any oral agreement or lease to the County Committee prior to approval of the contract.[26] Unkel did not provide the FSA with a lease on the land, he misrepresented ownership with regard to those tracts and enrolled Tract 517 and the rice bases for Tracts 506, 507, 516, and 517 in the PFC for 2001 as part of FSN 1431. The Court does not find that the FSA's error exonerates Unkel from liability for the misrepresentations he made regarding the PFC payments for 2001.

---

[25] As of August 2004 that amount has been reduced by receivables that have been paid off. Also, the NAD Director ruled in favor of Mike T. Unkel Farms, Inc. and removed the receivable for that entity.

[26] Title 7 C.F.R. § 1412.303(a) and (a)(1).

12

Plaintiffs next argue for relief pursuant to Title 7 C.F.R. § 1412.602.[27] Plaintiffs urge the Court to attribute 50% of the overstatement of rice bases acreage to the FSA because they made the initial error in deleting the tracts without removing the rice bases. Mathematically, this would cause the total overstated rice bases to be within the 5% tolerance allowed by this statute. However, this suggested remedy fails to address the fact that Unkel, for a period of years made misrepresentations to the FSA as to the true owners of these tracts of land and his lack of having a valid power of attorney. It is the producer's responsibility to ensure that the notice required by 7 C.F.R. § 1412.203 and the contract are correct with regard to the tracts constituting the farm, the ownership of those tracts and any lease agreement which might be in effect at the time. The Court finds that 7 C.F.R. § 1412.602 applies to violations of *wild rice plantings*, not to contract violations based on misrepresentations which are provided in 7 C.F.R. §§ 1412.405(b)(3) and 1412.401(a)(1997).[28]

Finally, Plaintiffs seek equitable relief because KCC received only $1,124.30 as a result of the overstated rice bases in the year 2001. Our review of the record does not find that the NAD Director acted arbitrarily or capriciously, nor was there an abuse of discretion in finding that Unkel, on behalf of KCC, did not act in good faith. Accordingly, the motion for summary judgment will be denied.

---

[27] (a)(1) If an acreage report of . . . wild rice planted on base acreage of a farm enrolled in DCP is inaccurate bu within tolerance as provided in paragraph (b) of this section and the CCC determines the producer made a good faith effort to comply with the provisions of this section, the producer shall accept a deduction in the direct and counter-cyclical payments for each such acre.

(b) For purposes of this section, tolerance is the amount by which the determined acreage may differ form the reported acreage and still be considered in compliance with programs requirements. Tolerance for . . . wild rice plantings is 5 percent of the reported . . . rice acreage, not to exceed 50 acres.

[28] § 1412.604 provides for the contract violations of the DCP for 2002-2007.

*Motion for Summary Judgment on Behalf of Kinder Canal Company, Inc. (doc. #10)*

This motion seeks a finding that absent a showing by the Agency that the KCC "erroneously represented any fact affecting a program determination", the finding of the Agency was in error and should be reversed.

On May 31, 2005, the NAD Director upheld an earlier decision by the FSA wherein it demanded the refund of certain farm program payments received by KCC from 1996-2003 and Mike T. Unkel from 1996 through 2002. The basis of the determination was the misrepresentations – as previously stated herein – by Unkel as agent for KCC. Plaintiffs maintain that the regulations cited by the FSA do not authorize the demand for a refund of PFC or DCP payments that did not result in program benefits. Plaintiffs also argue that the cited regulations do not authorize the demand for the return of Marketing Loss Assistance (MLA) payments.

Plaintiffs argue that the amount of payments received by KCC from the overstated rice bases was less, in every year except for 2001, than the amount of the payments for which KCC was eligible, but did not receive, as a result of program payment limitations.

KCC received payments for PFC and DCP program benefits from 1996 through 2003. In each of these years, except 2001, KCC reach the maximum limitation of program benefits payable to a producer in a program year.[29] In other words, had there not been payment limitations (and issues of misrepresentations), KCC would have qualified for more program benefits. Hence, because of the payment limitations, except in year 2001, KCC actually received no benefit at all from Unkel's misrepresentations. Thus, Plaintiffs argue that the program determination was not affected by the

---

[29] The DCP and MLA programs limit payments to $40,000.00 regardless of the amount of base controlled by the producer.

14

fraudulent inclusion of the acreage rices base– with the exception of year 2001.

What Plaintiffs are requesting is for this Court to fashion an interpretation of a regulation that allows a producer to misrepresent facts, with impunity, in instances where that producer receives payments up to the limitations allowed by the applicable law. For the years 1996 through 2003, Unkel misrepresented land ownership and crop acreage bases to the FSA to obtain program benefits. This is a violation of the PFC contracts for 1996 through 2002 and the DCP contract for 2002-2003. The Court is cognizant that a mistake was made by the FSA in 1997 when the acreage tracts were deleted without removing the rice acreage basis, however, Unkel knowingly made misrepresentations year after year after year regarding the true ownership and/or the absence of a lease agreement, consequently inflating the potential for program benefit payments. Thus, even though KCC had received the maximum amount of payments allowed by law in every year except 2001, this fact does not justify Unkel's perpetual fraud upon the FSA and the various payment benefit programs. Accordingly, this motion for summary judgment will be denied.

*Government's Cross-Motion for Summary Judgment (doc. #18)*

Defendant, Mike Johanns, Secretary of the United States Department of Agriculture moves the Court for summary judgment pursuant to judicial review of the final decision by the FSA. In their Complaint, Plaintiffs seek to have this Court issue a declaratory judgment that Plaintiffs, Kinder Canal Company, Inc. and Mike T. Unkel were eligible to receive PFC, DCP and MLA payments from 1996 through 2003. Plaintiffs are requesting that we issue a mandamus ordering Defendant to refund payments taken from Plaintiffs, with interest. Alternatively, Plaintiffs request that we issue a judgment limiting the amount of refund due by KCC to the payments received from the Eva Unkel base acreage in 2001.

As previously stated in the denials of the aforementioned motions for summary judgment, the Court finds that the final decision of the Director of the United States Department of Agriculture National Appeals Division was not in error. Based on a review of the record and briefs filed herein, we do not find that the Director's decision was arbitrary, capricious, or an abuse of discretion, and furthermore, it was in accordance with the law.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment on Behalf of Mike T. Unkel (doc. #5) will be denied, the Motion for Summary Judgment on Behalf of Kinder Canal Company, Inc. (2001) (doc. #6) will be denied, the Motion for Summary Judgment on Behalf of Kinder Canal Company, Inc. (doc. #10) will be denied, and Government's Cross-Motion for Summary Judgment (doc. #18) will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 31st day of January, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE